[Civ. No. 2613.   Second Appellate District.—November 12, 1918.]

## JOHN A. HORTON, Respondent, v. WILLIAM M. MOORE, Appellant.

QUIETING TITLE—POSSESSION AS SOLE BASIS OF PLAINTIFF'S CLAIM.—In an action to quiet title under section 1006 of the Civil Code, as it existed prior to its amendment in 1915 (Stats. 1915, p. 933), where the sole basis of the plaintiff's claim was possession taken immediately before the commencement of the action, with the intention of commencing suit, if the defendant had possession of the land at the time plaintiff or his attorney intruded thereon, no cause of action would arise in plaintiff's favor.

ID.—POSSESSION BY DEFENDANT—PAPER TITLE—EVIDENCE.—In this action to quiet title the evidence is held sufficient to show paper title in defendant to part of the tract in question.

ID.—DEED—POSSESSION BY GRANTEE OF PART OF LAND CONVEYED—CONSTRUCTIVE POSSESSION OF ENTIRE TRACT.—Although actual possession is taken by a grantee of only a part of the land described in a conveyance, he is deemed to be in possession of the whole.

ID.—TITLE AND POSSESSION OF GRANTOR IMMATERIAL.—In such case it is immaterial that the grantor had neither title nor possession.

ID.—POSSESSION OF DEFENDANT BY TENANT—CHANGE IN NATURE OF USE—INTERRUPTION OF DEFENDANT'S POSSESSION.—Where in an action to quiet title it appeared that the possession of the defendant for several years before the commencement of the action had been by a tenant under a lease from the defendant, that possession was not disturbed by a renewal of the lease at a mere nominal rental,

the only change in the use of the land being the pasturing thereon by the defendant of a much smaller number of cattle.

Id.—Actual Possession.—In such case the defendant was in actual possession when, later, and before commencing the action, the plaintiff and his attorney intruded on and built a fence around the land.

Id.—Lack of Title in Both Plaintiff and Defendant.—Where, in an action to quiet title, brought under section 1006 of the Civil Code, it appears that the defendant was in the actual possession of the land when the plaintiff, who had no title, intruded on and built a fence around it immediately before the commencement of the action, the absence of title in the defendant was immaterial since the plaintiff had no better title, and under section 1006 of the Civil Code, the defendant was entitled to maintain his possession against everyone except the state or persons who had acquired a better title than defendant had.

APPEAL from a judgment of the Superior Court of San Diego County, and from an order denying a new trial. C. N. Andrews, Judge.

The facts are stated in the opinion of the court.

Wright & Winneck, for Appellant.

Herbert C. Kelly and Curtis Hillyer, for Respondent.

JAMES, J.—This appeal is taken from a judgment entered in favor of plaintiff, quieting title as against defendant in a certain tract of land in the county of San Diego. There is also an appeal from an order denying defendant's motion for a new trial.

It appears from the record that the land which is made the subject of this controversy, consisting of about seventy-five acres, is hilly in contour and suitable generally for grazing purposes. The sole ground upon which plaintiff based his claim was that of possession acquired immediately before the commencement of this action and evidenced by the building of a wire fence about the tract. We gather from the transcript that counsel for the plaintiff was the chief mover in the enterprise to acquire a title to this property, for said counsel in his testimony admitted that he had never seen the plaintiff; that he had a contingent interest in the outcome of the suit, and had no claim of title other than that depending for its validity upon bare possession. He testified as follows: "The pos-

session was taken with the expectation of commencing suit as in the case of *Davis* v. *Crump* [162 Cal. 513, 123 Pac. 294] under section 1006 of the Civil Code, and when occupancy was taken, claim of title was made contemporaneously with the taking of the possession. From that time and ever since plaintiff has claimed that land as against everybody who cannot show title by the means stated in that section 1006." This action was commenced on the fifth day of June, 1914. Several days prior to that time, the nominal plaintiff, acting through Kelly, the attorney, put a force of men at work building a fence around the land. On the third day of June (two days before the action was commenced), defendant Moore caused the fence, which did not completely surround the land at that time, to be torn down. Immediately thereafter respondent's attorney had his men rebuild the fence, and on the 5th of June, at about noon time, it was nearly completed. The attorney, who was on the ground, left for his office, instructing his foreman that as soon as the ground had been completely surrounded by the fence to notify him by telephone. The foreman, acting under these instructions, telephoned the attorney at about 3 o'clock in the afternoon of June 5th that the fence had been completed, and the complaint in this action was immediately placed on file in the county clerk's office. Within the next day or two Moore again took down the fence. This comprised the whole showing of right in the plaintiff, as the evidence discloses it. The trial court determined that the plaintiff had possession of the property and that the defendant had neither title nor possession. Appellant contends that there was evidence that the defendant had possession of the whole tract claimed, and possession under color of title at least as to a portion thereof; and, secondly, that under the evidence the court was not justified in making the finding of possession in favor of the plaintiff for the reason that plaintiff's occupancy was not such as is intended to be described in section 1006 of the Civil Code; that under the terms of that section a mere "scrambling" possession is not sufficient to give rise to a presumption of title. The section mentioned has been amended since the controversy herein involved arose; it provided, prior to 1915, as follows: "Occupancy for any period confers a title sufficient against all except the state and those who have title by prescription, accession, transfer, will or succession." It

38 Cal. App.—40

must, of course, first be conceded that if defendant had possession of the tract of land at the time plaintiff or his attorney intruded thereon, no cause of action such as this would arise in plaintiff's favor. We may then examine the evidence to determine whether at the time the action was commenced the defendant was in possession of the land in dispute. There was no controversy as to the facts regarding the alleged possession by the defendant. Defendant testified that two or three years prior to 1913 he had leased the whole tract to one Allen, who had used it for grazing purposes and had paid rental therefor; that in 1913 Allen had not so many cattle to pasture and therefore not great need for the land, and that he (the defendant) had leased the property at the nominal rental of one dollar per year, the year under the nominal rental charge commencing in November, 1913, and not having expired at the time of the building of the fence by plaintiff in June, 1914. The defendant testified, in part, as follows: "I asked him [Allen], after he gave up his butchering business, to take charge of it and be nominally in possession and pay me a nominal sum of one dollar per year so as to hold him in possession of the property at that time. . . . The city had stopped him from butchering in his place and he didn't require it. He had just his own cattle over it—fifteen or twenty head of cattle." Like testimony was given by the lessee, Allen, with the further statement that he knew the boundaries of the property; that during the early years of his leasing he herded at times as many as two hundred head of cattle over that property and other property which he leased for the same purposes; that he excluded other cattle from the ground leased, also sheep, and, in brief, maintained possession of it. Referring to the last year, when the nominal rental was in effect, he said that he had not herded as many cattle there, adding: "I haven't got over twenty head of stock there now. They are on this particular Pueblo Lot 1182 pretty nearly every day." Several deeds were introduced on behalf of the defendant, being generally quitclaim in form and reciting that the grantors relinquished all interest in "Pueblo Lot 1182," being the tract which included the seventy-five acres in dispute. Some of these deeds specified, in addition, subdivisions of the larger tract and referred to a certain partition suit which had theretofore been prosecuted in the superior court of San Diego County. Three of these

deeds had been recorded at dates long prior to the building of the fence by the plaintiff. Defendant's testimony showed that, guided by a certificate of title issued by an abstract company; he had for several years been endeavoring to buy in the interests of all persons concerned in the title of the land in dispute. The deeds which we have mentioned, however, appear to have covered only portions thereof. We have noted that this land was contained within a larger tract, the larger tract being known as Pueblo Lot 1182. While two of the quitclaim deeds purported to transfer to the defendant "all interest in Pueblo Lot 1182," they also, as just stated, referred to the property intended to be conveyed as subdivisions thereof. One of these subdivisions contained only two and one-half acres, another ten acres. A third deed was quitclaim in form without specifying any particular portions of the whole tract; this latter deed, as defendant testified, being intended to cover a certain forty-four acres. It does not appear that defendant by the conveyances which he showed in evidence pretended to have acquired paper title to the whole tract. It does appear to us, however, that such paper showing sufficient to give color of title, was established as to portions of the tract, in so far as that question may be important to be considered. Where actual possession is taken of only a part of land described in a conveyance, the grantee is constructively deemed to be in possession of the whole, and it is immaterial that the grantor had neither title nor possession. (*Webber* v. *Clarke*, 74 Cal. 11, [15 Pac. 431].)

But aside from any aid which a colorable title might give to defendant's case: The land was occupied by defendant's tenant for at least several years prior to November, 1913, and this tenant knew the general boundaries thereof and excluded other persons from its use, and we see no reason to hold that this possession was disturbed in November, 1913, when the defendant renewed the lease at the nominal rate, for the only difference in the use to which the land was put thereafter, and down to the commencement of the action, was that the lessee pastured thereon a much smaller number of cattle than he had theretofore. If the defendant may be said to have had actual possession of the land at the time the plaintiff and his attorney intruded thereon and built the fence, then it matters not at all that he held under color of title, for, by the admission of his counsel and the utter lack of evidence showing

anything to the contrary the plaintiff had no better title. (*Smith* v. *Hicks,* 139 Cal. 217, [73 Pac. 144].) In such a case the defendant was the occupant and entitled, under section 1006 of the Civil Code, to maintain his possession against everyone except the state or persons who had acquired a better right than he had. It has been uniformly held that in order to establish possession of real property, it is not necessary that a fence be built about it, and that if a fence is so built, it is merely evidence tending to show possession of the person who constructs it. It is also held that the terms "occupation," "*possessio pedis*," "subjection to the will and control," are synonymous; that property is possessed and occupied when it is put to a use appropriate to its general character. (*Webber* v. *Clarke, supra; Lawrence* v. *Fulton,* 19 Cal. 683; *United States* v. *Rogers,* 23 Fed. 658; *Andrus* v. *Smith,* 133 Cal. 78, [65 Pac. 320].) As stated at the trial, counsel for the plaintiff maintains that his case satisfies all the requirements presented in *Davis* v. *Crump,* 162 Cal. 513, [123 Pac. 294]. In that we do not agree at all. An examination of the text of that decision shows that the court found nothing to indicate possession in anyone but the defendants at the time of the making of the claim of title, the court saying: "As we have seen, there is nothing here to compel the conclusion that the possession was taken otherwise than peaceably, or that any portion of the property inclosed was in the actual possession of any other person at the time." As appellant suggests, the possession of the plaintiff at best was well described, considering the interruption thereof, as "scrambling." In the view we take of the evidence, the defendant sufficiently established the fact of actual possession within the meaning of the law, against which plaintiff was not entitled to prevail.

The judgment and order are reversed.

Conrey, P. J., and Myers, J., *pro tem.,* concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 9, 1919.

Angellotti, C. J., Sloss, J., Melvin, J., Lawlor, J., and Lennon, J., concurred.